UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES DAVID MATTINGLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-1225-SPM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff James David Mattingly ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's applications.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.  **FACTUAL BACKGROUND**

At the hearing before the ALJ on August 5, 2019, Plaintiff testified as follows. (Tr. 35-68). He was working as a production supervisor at a laundry service and had been doing so from March 11, 2019, to the date of the hearing. He was working 40 hours a week. (Tr. 38). The work involved supervising employees, shuffling carts, and helping sort laundry. (Tr. 38-39). The job involved no sitting and involved lifting and carrying up to 50 pounds. (Tr. 39). Plaintiff does not take extra breaks at work. (Tr. 62). His doctor does not like that he is working, but he understands it, because Plaintiff's wife needs insurance. (Tr. 60-61). Plaintiff worked in the past at JW Aluminum Company, both as a production supervisor (a job that involved lifting 50 to 75 pounds), and as an operator (a job that involved lifting up to 300 pounds). (Tr. 39-41). His job with JW Aluminum came to an end because of his hernia surgeries. (Tr. 41).

Plaintiff testified that he cannot work full-time because of numbness in his hands, pain in his neck, and an open wound on his neck from a surgery that has not properly healed. (Tr. 41-42). Plaintiff testified that the pain in his shoulders is at a "ten" (described by the ALJ as "the most excruciating pain the body can experience") and has been since ten years ago. (Tr. 44). The pain in his hands is at an eight and has been for three to four years. (Tr. 45). His headaches are present "every day, every second"; they are at a pain level of ten and have been since 2017. (Tr. 45). He also has numbness on the right side of his face; he relieves it by closing his eyes and taking tramadol. (Tr. 45-46). Plaintiff experiences numbness when he moves his hands and arms. (Tr. 60). His neck hurts when he puts it straight up or touches things. (Tr. 61-62). He has leg pains all day long, and he takes Requip for that. (Tr. 62). Plaintiff reported that his pain is made worse by "stupid people" and is reduced or relieved by tramadol. (Tr. 46). He makes it through the day at

work by taking tramadol; he takes at least four a day. (Tr. 60). He does not have side effects from his medications. (Tr. 51-52).

Plaintiff is able to dress himself, bathe himself, shave himself, brush his teeth, and use the toilet. (Tr. 53). He does not prepare meals, mop, sweep, vacuum, do laundry, do dishes, or do yard work. (Tr. 53-54). He is capable of doing the chores "to an extent" but suggested that his wife thinks he does not do them right. (Tr. 59). He does take out the trash and go to the grocery store twice a week. He can lift and carry 25 to 40 pounds and can walk 10,000 steps in the course of a whole day. (Tr. 54).

Plaintiff testified that his concentration is poor, he hates crowds of people, he does not see any of his siblings, and he sometimes forgets to take his medications. (Tr. 52). He does not attend church or social organizations and does not volunteer anywhere. (Tr. 56). He has an anger issue and was physically violent with his wife in July 2018; he got arrested and had to go to a psych ward. He is made angry by "stupid people," and he feels that everyone is against him. (Tr. 57). He also has depression. He forgets things a lot, then gets in trouble, then gets angry. (Tr. 58). He has problems being around people and once got into a fight with one of his wife's friends at a graduation function. (Tr. 63).

With respect to the medical and other records, the Court accepts the facts as presented in the parties' respective statements of fact. Briefly, the record shows that during the relevant time period, Plaintiff had problems including degenerative disc disease in the cervical spine; a cervical spine surgery in July 2018; neck pain radiating into shoulders; arm and hand paresthesia, headaches; a hernia that required surgical repair; nausea and abdominal pain; neuropathy consistent with carpal tunnel syndrome and radiculopathy; major depressive disorder; attention deficit-hyperactivity disorder; anxiety; nightmares, and anger issues.

Additionally, after the hearing, Plaintiff submitted to the Appeals Council numerous additional medical records, some dated prior to the ALJ's decision and some dated after it. With respect to some of the records, the Appeals Council found that they did not show a reasonable probability that they would change the outcome of the decision. With respect to others, the Appeals Council found that they did not relate to the period at issue and therefore did not affect the decision about whether he was disabled beginning on or before October 18, 2019. (Tr. 2).

## II.  PROCEDURAL BACKGROUND

On July 9, 2018, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since August 29, 2014. (Tr. 827-39). He subsequently amended his alleged onset date to September 19, 2017. (Tr. 867). Plaintiff alleged disability due to cervix damage, GERD, gall bladder removal, bowel obstructions, hernias, headaches, shoulder pain, depression, and anxiety. (Tr. 869). His applications were initially denied. (Tr. 758-63). On September 28, 2018, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ') (Tr. 764-68). On August 5, 2019, the ALJ held a hearing on Plaintiff's claims, at which Plaintiff testified, as did a vocational expert. (Tr. 31-75). The ALJ issued an unfavorable decision on October 18, 2019. (Tr. 8-29). On November 6, 2019, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 824-26). On July 21, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III.  STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health*

*& Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the

claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

6

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

IV.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, at Step One, the ALJ found that there was not sufficient evidence in the record to determine whether Plaintiff had engaged in substantial gainful activity since the amended alleged onset date, so she moved on to Step Two. (Tr. 13-14). At Step Two, the ALJ found that the ALJ found that Plaintiff had the following severe impairments: cervical spine dysfunction with radiculopathy status post-cervical fusions, carpal tunnel syndrome of the right upper extremity, obesity; bipolar-I disorder, anxiety, recurrent abdominal hernia status post-multiple hernia repair surgeries, and alcohol abuse. (Tr. 14). At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 14). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] can stand and walk for up to six hours in an eight-hour workday. However, the claimant can lift, carry, push or pull no more than 10 pounds occasionally. [Plaintiff] can no more than frequently reach overhead to the left, and frequently reach overhead to the right. The claimant can never climb ladders, ropes or scaffolds, and he can no more than occasionally climb ramps and stairs. [Plaintiff] can never work at unprotected heights, never work around moving mechanical parts, never work around concentrated levels of humidity and wetness, and never work in vibration. [Plaintiff] is able to perform simple, routine tasks. However, [Plaintiff] is limited to work that involves no more than occasional interaction with coworkers and supervisors. Additionally, [Plaintiff] is limited to work that does not involve interaction with the public.

(Tr. 16-17). At Step Four, the ALJ found plaintiff was unable to perform his past relevant work. (Tr. 23). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform. (Tr. 23). Representative occupations include addresser (*Dictionary of Occupational Titles* No. 209.587-010), document preparer (*Dictionary of Occupational Titles* No. 249-587-018), and tube operator (*Dictionary of Occupational Titles* No. 239.687-014). (Tr. 24). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from September 19, 2017, through the date of the decision. (Tr. 24).

## V. STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## VI.   DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds.

First, Plaintiff argues that the Appeals Council erred in denying his request for review. In particular, Plaintiff argues that records related to a cervical surgery conducted shortly after the hearing to revise a prior unsuccessful surgery on the cervical spine should have been considered new, material, and related to the time period prior to the ALJ's decision. After review of the relevant records, the Court finds no error. The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (effective Jan. 17, 2017 to Dec. 15, 2020). Where, as here, "the Appeals Council denies review of an ALJ's decision after reviewing new evidence, "[the Court does] not evaluate the Appeals Council's decision to deny review, but rather [it] determine[s] whether the record as a whole, including the new evidence, supports the ALJ's determination." *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (quoting *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)). *Accord Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012).

9

After review of the new records, for the reasons stated in the Commissioner's brief, the Court finds that even when the new evidence is considered, the ALJ's decision is supported by substantial evidence in the record as a whole. The Court notes that although the new evidence showed that Plaintiff underwent a revision cervical surgery in August 2019 to address a prior surgery (done during the relevant period) that did not successfully address his symptoms, the ALJ was already aware that that revision surgery had been scheduled. (Tr. 43, 46, 1368). Although some of these records may be highly relevant to Plaintiff's condition *after* the ALJ's decision, there is nothing in the new records that adds significant additional support to Plaintiff's allegations of disabling neck impairments that existed prior to the ALJ's decision.

Second, Plaintiff argues that the ALJ did not conduct a proper analysis of Plaintiff's subjective complaints of pain, as required by *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and related case law and regulations. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7-*8 (Oct. 25, 2017). After review of the record, the Court finds that the ALJ conducted an adequate analysis of the credibility of Plaintiff's subjective complaints, supported by substantial evidence and consistent with the governing regulations. The Court first notes that the ALJ apparently gave significant weight to Plaintiff's complaints of pain, restricting him to sedentary work and limiting his ability to lift, carry, push, pull, and reach. (Tr. 16). To the extent that the ALJ did discount Plaintiff's subjective complaints, although she could have been more explicit in her analysis, a review of the decision as a whole demonstrates that the ALJ adequately considered several of the relevant factors in evaluating Plaintiff's complaints of pain—in particular, Plaintiff's ability to work 40 hours a week in a physically demanding job at the time of the hearing; Plaintiff's ability to perform normal daily activities, including taking out the trash,

10

conducting all personal care, lifting and carrying 25 to 40 pounds, and walking 10,000 steps in a day; and objective medical evidence showing that Plaintiff's musculoskeletal examinations were often unremarkable, with findings of full or nearly full muscle strength, full or functional range of motion, and intact sensation. (Tr. 17-20). For these reasons and for the other reasons discussed in Defendant's brief, the Court finds that the ALJ's analysis of Plaintiff's subjective complaints of pain was supported by substantial evidence. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) ("This court defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's evaluation of credibility.'") (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).

Third, Plaintiff argues that the ALJ exceeded her authority when she inferred limitations from the objective medical findings, both with respect to Plaintiff's physical functioning and with respect to Plaintiff's mental functioning. After review of the record, the Court finds this argument is without merit. Although an ALJ may not simply draw her own inferences from medical reports, it is the role of the ALJ to "determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). *See also Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing subjective complaints). Here, the record shows that the ALJ properly based her decision based on all of the evidence, including the objective medical evidence, the medical opinion evidence, and the non-medical evidence.

Fourth, Plaintiff argues that the RFC is not supported by substantial evidence. After review of the record, for the reasons stated in the Commissioner's brief, the Court finds the RFC was

11

supported by substantial evidence. As discussed above, the RFC assessment included very significant limitations, both mental and physical. In formulating the RFC, the ALJ relied on the opinions of the state agency consultants (which she found persuasive); Plaintiff's own reports of his activities and capabilities; and the many unremarkable objective findings (mental and physical) in the record. (Tr. 16-22). Plaintiff argues that the ALJ relied too heavily on the opinions of the state agency physicians, whose opinions were dated nearly a year prior to the hearing date and before the creation of significant new evidence relevant to Plaintiff's cervical impairments and mental condition. But the ALJ did not rely solely on those opinions, and the Court finds no error in the ALJ's decision to rely partially on those opinions along with the rest of the evidence in the record as a whole. *See Casey v. Astrue*, 503 F.3d 687, 8, 503 F.3d at 694 ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole.").

Finally, Plaintiff argues that the ALJ did not properly evaluate the opinion of Plaintiff's treating orthopedist, Dr. Morgan, as required by 20 C.F.R. § 404.1520c and § 416.920c. Again, for the reasons stated in the ALJ's brief, the Court disagrees. The ALJ properly considered the supportability and consistency factors, as required by the regulations, and reasonably found that the extreme limitations in his opinion (which included stating that Plaintiff could sit, stand, or walk only two hours total in a work day and could lift no more than 10 pounds occasionally) were not well supported by Dr. Morgan's citation to Plaintiff's history of cervical spine and surgery issues and were inconsistent with both Plaintiff's own testimony regarding his abilities and with the objective evidence in the record. (Tr. 22).

The Court acknowledges that the record contains conflicting evidence regarding the effects of Plaintiff's impairments, and the ALJ certainly could have reached a different conclusion with

12

regard to the appropriate weight to give to the various opinions and other evidence in the record. However, it is not the role of this Court to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. See *Hacker v. Barnhart*, 459 F.3d 934, 936-38 (8th Cir. 2006).

### VII. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of March, 2022.